STATE OF VERMONT

SUPERIOR COURT

ENVIRONMENTAL DIVISION
Docket No. 151-11-17 Vtec

In Re: Snowstone, LLC
Jurisdictional Opinion JO-2-308

## INTERIM ORDER

### Procedural History

On October 18, 2017, District Coordinator William T. Burke issued Jurisdictional Opinion #2-308 ("JO"), finding that the proposed extraction and processing of dimensional stone by Snowstone, LLC ("Snowstone") at a previously-existing quarry in Cavendish "constitutes development for a commercial purpose on more than one acre of land in Cavendish, Vermont—a 'one-acre town' for Act 250 jurisdictional purposes." The District Coordinator's analysis of the transaction led him to conclude that the 0.93± acre parcel Snowstone intended to acquire and the 175± acre parcel to be retained by the Sellers were owned or controlled by the same "person" and should therefore be considered a single tract of land for purposes of Act 250. Coordinator Burke stated:

> Upon due consideration of the facts here: that Seller controls the ability to reacquire the 0.64-acre tract upon conclusion of the quarrying and that Seller has secured that right on "terms as may be offered by Buyer to a bona fide third-party purchaser", I conclude that the Sellers maintain sufficient control of the land to be conveyed such that Seller and Buyer remain effectively affiliated for profit in the nature of a joint venture under 10 V.S.A. § 6001(14). Accordingly, the jurisdictional acreage to be applied is not limited to

1

the combined 0.93 acres proposed to be conveyed here, but to the entire 176-acre tract owned by Seller.

J.O. at 12.

Snowstone, LLC filed an appeal of the JO with this Court on November 6, 2017. Following the appeal filing, Snowstone and its Sellers entered into a new Purchase and Sale Contract dated March 15, 2018 which was modified to address the concerns of the District Coordinator. The March 15, 2018 contract provides for a reduced purchase price of $60,000.00, which would be paid in full to the Sellers at closing and would be financed through conventional financing. The contract was further revised to remove the right of first refusal and remove any restrictions on future development.

An evidentiary hearing was held before this Court on May 17, 2018. Snowstone presented evidence regarding the background and terms of the revised Purchase and Sale contract and the proposed operation of the dimensional stone quarry. Snowstone argued that the Purchase and Sale Agreement is a good faith arm's-length transaction. Snowstone further argued that evidence regarding potential impacts outside the quarry are not relevant to the jurisdictional issue before the Court, and that evidence of such impacts should be limited to the extent necessary to enable the Court to determine whether the dimensional stone quarry can be operated on less than one acre of land.

Neighbors argued that the stone quarry would require one or more stormwater discharge permits and that such permits, if granted, would include several conditions, including conformance with the applicable Best Management

2

Practices ("BMP's") for the needed stormwater treatment systems. Neighbors further argued that the applicable stormwater BMPs, together with the proposed quarrying, would be physically impossible to locate and operate within the Snowstone parcel.

As of the date of hearing, Snowstone, LLC had not submitted an application to the Vermont Agency of Natural Resources for stormwater discharge approval. Snowstone representatives asserted that they were reluctant to expend substantial financial resources until the Court resolves the issue of whether this is "an arm's-length transaction" and whether the Seller and Buyer should be considered as the same "person" for purposes of Act 250 jurisdiction. See Appellant's Statement of Questions, Question #2.[1]

Snowstone's procedural suggestion was made at the close of its case-in-chief, and before Neighbors had had an opportunity to present their witnesses and other evidence. Nonetheless, Neighbors consented to Snowstone's bifurcation suggestion, subject to several conditions. The Court concluded that Neighbors' requested conditions were reasonable and granted Snowstone's request to bifurcate the issues raised in this appeal.

Neighbors represented that they did not have testimony or other evidence to contradict Snowstone's evidence concerning the revised Purchase and Sale agreement and the assertion that the proposed sale would be an "arm's length" transaction. The Court therefore concluded that it would first determine whether

---

[1] "Is the entire tract considered to be owned by a single 'person' for the purpose of determining Act 250 Jurisdiction?"

the Savage-Snowstone transaction is an "arm's-length" transaction and whether the Sellers retain sufficient ownership and control of the Snowstone parcel, such that the Sellers and Snowstone should be considered a single "person" for purposes of Act 250 jurisdiction. This Interim Order is issued to govern how the remaining issues that can be raised in this jurisdictional opinion appeal are to be addressed by the Parties and the Court.

## Scheduling and Deadlines

1. Within the next thirty days (i.e.: no later than **Monday, July 16, 2018**), the Parties shall provide written briefs to the Court concerning the written comments offered to District Coordinator Burke with respect to the Jurisdictional Opinion, to enable the Court to determine the proper scope of this appeal.

2. This Court shall thereafter determine whether the proposed sale to Snowstone is an "arm's-length transaction" and whether the Snowstone, LLC parcel and the retained parcel should be considered as owned or controlled by the same "person" for purposes of Act 250 Jurisdiction.

3. Within 30 days of this Court's ruling, Snowstone, LLC shall promptly make application to the Vermont Agency of Natural Resources or its subdivisions, including the Department of Environmental Conservation, for all stormwater and discharge permits required for the proposed quarrying operation.

4

4.     Snowstone, LLC or its agent(s) shall transmit copies of the permit application(s) and supporting materials upon Neighbors' counsel via e-mail or first-class mail on the same day as it is submitted.

5.     Any Snowstone permit application pertaining to this proposed quarry project shall include a request that the Neighbors be included on an Interested Persons List, pursuant to the Environmental Protection Rules, Chapter 18, Stormwater Management Rule § 18-308(d).

6.     Snowstone will not contest Neighbors' standing in permitting proceedings concerning the proposed quarry or Neighbors' status as "persons aggrieved" for purposes of standing to intervene in the permitting process or to appeal under the Rule, §18-314 and 10 V.S.A. Chapter 220.7.

7.     Snowstone shall advise the Court within ten (10) calendar days of any determination or withdrawal of any permit applications made to the Vermont Agency of Natural Resources or its subdivisions, including the Department of Environmental Conservation, and shall confirm that neighbor's counsel has received a copy of such determination or withdrawal.

8.     Within thirty (30) days of such determination or withdrawal, any Party to this jurisdictional opinion appeal shall make a request that the Court conduct a further hearing on whether any stormwater permit determination has a relevancy to the legal issue of whether all activities necessary for the operation of the proposed quarry can occur within the 0.93± acres that Snowstone proposes to purchase.  In the event that such a request is made, the Court will schedule a further hearing.  Any party aggrieved by this Court's final decision

shall have a right to file a timely appeal within thirty (30) days of such final decision.

9. In the event that no Party requests a further hearing, then this Court will issue a final entry of judgment, noting that its initial determination concerning this jurisdictional opinion appeal has then become final, subject to any rights of appeal.

10. Neither Snowstone nor any agent thereof shall extract or process stone or engage in any commercial quarrying activity on the Subject Parcel until all determinations in the present appeal and determinations in proceedings relating to applicable stormwater discharge permits become final, including exhaustion of appellate remedies.

Dated at Newfane, Vermont, this 14th day of June, 2018.

Honorable Thomas S. Durkin
Vermont Superior Court
Environmental Division